# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

OKLAHOMA LAW ENFORCEMENT
RETIREMENT SYSTEM, Individually and on
Behalf of All Others Similarly Situated,

      Plaintiff

    v.

ADEPTUS HEALTH INC., THOMAS S.
HALL, TIMOTHY L. FIELDING, RICHARD
COVERT, DANIEL W. ROSENBERG,
GREGORY W. SCOTT, RONALD L.
TAYLOR, JEFFERY S. VENDER, STEVEN
V. NAPOLITANO, STEPHEN M.
MENGERT, STERLING PARTNERS,
GOLDMAN, SACHS & CO., AND
MERRILL LYNCH, PIERCE, FENNER &
SMITH INCORPORATED,

      Defendants.

CIVIL ACTION NO.  6:16-cv-1243

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| LABORERS' LOCAL 235 BENEFIT FUNDS, Individually and On Behalf of All Others Similarly Situated,<br><br>   Plaintiff<br><br> v.<br><br>ADEPTUS HEALTH INC., THOMAS S. HALL, TIMOTHY L. FIELDING, RICHARD COVERT, DANIEL W. ROSENBERG, GREGORY W. SCOTT, RONALD L. TAYLOR, JEFFERY S. VENDER, STEVEN V. NAPOLITANO, DANIEL J. HOSLER, STEPHEN M. MENGERT,  STERLING PARTNERS, GOLDMAN, SACHS & CO., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, EVERCORE GROUP L.L.C., MORGAN STANLEY & CO. LLC, PIPER JAFFRAY & CO., RBC CAPITAL MARKETS LLC, DOUGHERTY & COMPANY LLC, DEUTSCHE BANK SECURITIES INC., AND BMO CAPITAL MARKETS CORP.,<br><br>   Defendants. | CIVIL ACTION NO.  6:16-cv-01391 |

**DEFENDANTS' MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(A) AND BRIEF IN SUPPORT**

Defendants Adeptus Health Inc., Thomas S. Hall, Timothy L. Fielding, Richard Covert, Daniel W. Rosenberg, Gregory W. Scott, Ronald L. Taylor, Jeffery S. Vender, Steven V. Napolitano, Daniel J. Hosler, and Stephen M. Mengert, SCP III AIV THREE-FCER, L.P. and SCP III AIV THREE-FCER Conduit, L.P. (together, named in the Complaint as "Sterling Partners"), Goldman, Sachs & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated,

Evercore Group L.L.C., Morgan Stanley & Co. LLC, Piper Jaffray & Co., RBC Capital Markets, LLC, Dougherty & Company LLC, Deutsche Bank Securities Inc., and BMO Capital Markets Corp. (collectively, "Defendants" or "Movants") file this Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) and Brief in Support and respectfully request the Court enter the proposed order submitted contemporaneously with this Motion and Brief to transfer each of these cases from the Tyler Division of the United States District Court for the Eastern District of Texas ("Tyler Division") to the Sherman Division of the United States District Court for the Eastern District of Texas ("Sherman Division").

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................1

II.  FACTUAL BACKGROUND ..........................................................................................2

    A.  The Parties ..........................................................................................................2

    B.  The Allegations ...................................................................................................3

III.  PROCEDURAL HISTORY ............................................................................................4

IV.  THESE CASES SHOULD BE TRANSFERRED TO THE SHERMAN DIVISION OF THE EASTERN DISTRICT OF TEXAS ...............................................6

    A.  Venue is Proper in the Eastern District of Texas .................................................7

    B.  The Relevant Factors Dictate that the Sherman Division is More Convenient .........................................................................................................7

    C.  The Private Interest Factors Strongly Favor Transfer to the Sherman Division ...............................................................................................................8

        1.  Sources of Proof Are More Easily Accessed in the Sherman Division ....................................................................................................8

        2.  The Availability of Compulsory Process to Secure the Attendance of Non-Parties Favors Transfer to Sherman ..............................................9

        3.  The Cost of Attendance for Willing Witnesses Favors Transfer .............10

        4.  No Delay Will Result From Transfer ......................................................11

    D.  The Public Interest Factors Also Favor Transfer to the Sherman Division .........11

        1.  The Sherman Division Has a Strong Local Interest in Resolving This Dispute ..........................................................................................11

        2.  The Relative Docket Conditions of the Sherman and Tyler Divisions Favor Transfer ......................................................................12

            a.  Case Allocations ..........................................................................12

            b.  Caseload .......................................................................................12

        3.  The Courts' Familiarity with the Governing Law is Neutral...................13

        4.  There Are No Conflict of Law Issues in This Case ................................13

V.  PLAINTIFFS' FORUM CHOICE DOES NOT OUTWEIGH THE FACTORS FAVORING TRANSFER ...........................................................................................13

VI.  THE FILING OF THE CONSUMER LITIGATION IN THE SHERMAN DIVISION FAVORS TRANSFER .............................................................................14

VII.  CONCLUSION ...........................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adkinson v. Adeptus Health,*
  No. 4:17-CV-00006 (E.D. Tex. Jan. 3, 2017) .......................................................6

*Advanced Processor Techs. LLC v. Atmel Corp.,*
  No. 2:12-CV-152-JRG-RSP, 2013 WL 1279053 (E.D. Tex. Mar. 26, 2013) .......................11

*Barton v. Young,*
  144 F. Supp. 2d 685 (E.D. Tex. 2001) .......................................................passim

*In re Nematron Corp. Secs. Litig.,*
  30 F. Supp. 2d 397 (S.D.N.Y. 1998) ..........................................................13, 14

*In re Radmax, Ltd.,*
  720 F.3d 285 (5th Cir. 2013) ...............................................................passim

*In re Triton Ltd. Sec. Litig.,*
  70 F. Supp. 2d 678 (E.D. Tex. 1999) ..........................................................11

*In re Volkswagen AG,*
  371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*") .............................................passim

*In re Volkswagen of America, Inc.,*
  545 F.3d 304 (5th Cir. 2008) (en banc) ("*Volkswagen II*") ...................................6, 8, 12, 13

*IPVX Patent Holdings, Inc. v. AltiGen Commc'ns, Inc.,*
  No. 6:11-CV-568, 2014 WL 12597042 (E.D. Tex. Feb. 11, 2014) .....................................10

*Smith v. Michels Corp.,*
  No. 2:13-CV-00185, 2013 WL 4811227 (E.D. Tex. Sept. 9, 2013) ..................................7, 13

STATUTES

15 U.S.C. §§ 77k, 771(a)(2), and 77o ...................................................................4, 5

15 U.S.C. § 78aa ......................................................................................7

15 U.S.C. §§ 78j(b), 78t(a) ...........................................................................4, 5

15 U.S.C. §78u-4 ......................................................................................5

28 U.S.C. § 1391(b) and (c) ...........................................................................7

28 U.S.C. § 1404(a) ...................................................................................1, 2, 6, 15

**OTHER AUTHORITIES**

17 C.F.R. § 240.10b-5 ...........................................................................................................4, 5

FED. R. CIV. P. 45 ...................................................................................................................9

www.nysliuna.org/local-unions/laborers-local-235 .....................................................................2

www.olers.state.ok.us ...........................................................................................................2

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

These two securities class actions filed against Adeptus Health Inc. (the "Company") and certain of its current and former officers, directors, shareholders and underwriters have no connection to the Tyler Division.  The Company has no operations in this division, none of the relevant events took place in this division, none of the likely witnesses or relevant documents are located in this division, and neither of the plaintiffs has any connection to this division.  There is no reason these cases should be added to this Court's already-crowded docket.

Rather, the public and private interest factors and the surrounding facts and circumstances strongly support the transfer of these cases to the Sherman Division.  The Company is headquartered in the Sherman Division.  The Company's public statements at issue in this case were prepared and issued in the Sherman Division.  The Company's corporate and financial records are located in the Sherman Division.  Likely witnesses work in the Sherman Division.  The federal courthouse in the Sherman Division will even be more convenient for the Plaintiffs.  In fact, Laborers' Local 235 Benefit Funds ("LLBF" or "Plaintiff") initially filed its complaint ("LLBF I Complaint" or "LLBF I Litigation") in the more convenient Sherman Division and five weeks later voluntarily dismissed that case and filed the essentially identical complaint ("LLBF II Complaint" or "LLBF II Litigation") in this division.

In addition, transfer of these cases will allow appropriate coordination of certain discovery between these cases and a putative class action recently filed against the Company and related entities in the Sherman Division asserting consumer claims based upon some of the same factual allegations made in these cases.

A case may be transferred to "any other district or *division* where it might have been brought" "for the convenience of the parties and witnesses" and "in the interest of justice."  *See* 28 U.S.C. § 1404(a).  As set out in detail below, consideration of the private interests of the

parties and the public's interest in the fair administration of justice using the factors established by the United States Court of Appeals for the Fifth Circuit in *In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*") and the surrounding facts and circumstances demonstrates that transfer of the cases from the Tyler Division to the Sherman Division under 28 U.S.C. § 1404(a) is appropriate.  Thus, Defendants respectfully request this Court grant this Motion and transfer these cases from the Tyler Division to the Sherman Division.

## II.      FACTUAL BACKGROUND

### A.      The Parties

According to its website (www.olers.state.ok.us), Oklahoma Law Enforcement Retirement System ("OLERS" or "Plaintiff") administers retirement and medical benefits for members of the law enforcement profession in the state of Oklahoma and their families.  Upon information and belief, and also according to that same website, OLERS' principal office is located at 421 NW 13th St., Suite 100, Oklahoma City, Oklahoma 73103.  OLERS' principal office is approximately 301 miles from the federal courthouse in Tyler, Texas, and 168 miles from the federal courthouse in Sherman, Texas.

On information and belief, and based upon information contained in the website for the New York State Laborers' Union (www.nysliuna.org/local-unions/laborers-local-235), Laborers' Local 235 is a Local of the New York State Laborers' Union and has its principal office at 41 Knollwood Road, Elmsford, New York 10523.  On further information and belief, Plaintiff LLBF consists of funds administered for the benefit of the members of Laborers' Local 235.  On further information and belief, and also according to the website, LLBF serves workers in Westchester County of New York.  LLBF has no operations or offices anywhere in the State of Texas.

The Company is the holding company of Adeptus Health LLC ("Adeptus").   (OLERS Complaint at ¶ 27.)   Adeptus owns and/or operates freestanding emergency rooms and hospitals in Texas, Arizona, Louisiana, and Colorado.   (*Id.* at ¶ 25.)   The Company's corporate offices ("Company Headquarters") are and have been at all times relevant to this litigation located at 2941 Lake Vista Drive, Lewisville, Texas 75067 (*See*, David Pyle Declaration, attached hereto as Exhibit A ("Pyle Declaration") at ¶ 3), a location within the Sherman Division of the Eastern District of Texas.   The Company Headquarters are approximately 117 miles from the federal courthouse in Tyler, Texas and only 59 miles from the federal courthouse in Sherman, Texas.

### B.     The Allegations

On June 30, 2014, the Company completed an initial public offering of 5.3 million common shares.   (OLERS Complaint at ¶ 28.)   The Company subsequently completed three secondary public offerings (the "SPOs") in May 2015, July 2015, and June 2016, offering 1.6 million common shares, 2.645 million common shares, and 2.45 million common shares, respectively, from which the Company received total net proceeds of approximately $467.84 million.   (*Id.* at ¶¶ 29-30; LLBF II Complaint at ¶¶ 12, 62.)

Plaintiff OLERS alleges that it purchased shares of Company common stock pursuant to the July 2015 SPO at prices artificially inflated by the Company due to material departures from Generally Accepted Accounting Principles ("GAAP") in the Company's financial statements for the year ending December 31, 2014 and for the quarters ending March 31, 2015 and June 30, 2015. (OLERS Complaint at ¶¶ 98, 103-04, 110.)   Specifically, OLERS accuses the Company of deviating from GAAP by improperly recognizing revenue through predatory overbilling practices and failing to disclose uncertainties associated with these billing practices.   (*Id.* at ¶¶ 46, 107.)   OLERS asserts that the discovery of these material misstatements subsequent to the

SPOs caused a decline in the price of the Company common stock to the detriment of OLERS and the putative class.  (*Id.* at ¶¶ 108-109.)

In the LLBF II Complaint, Plaintiff LLBF asserts claims against all of the Defendants named in OLERS Litigation (and more) and alleges violations of the same provisions of the Securities Act and the Exchange Act as those alleged by Plaintiff OLERS.  (LLBF II Complaint ¶¶ 1, 19.)  As in the OLERS Litigation, the LLBF II Complaint alleges that the defendants "failed to disclose material adverse facts about the Company's business, operations and future prospects."  (*Id.* at ¶ 5.)  The LLBF II Complaint includes additional class members, defendants, offerings, and allegations of misconduct, as well as a larger class period than the OLERS Litigation.

## III.    PROCEDURAL HISTORY

Plaintiff OLERS filed its complaint (the "OLERS Complaint" or "OLERS Litigation") on October 27, 2016,  alleging violations of Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o, Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.   (OLERS Complaint at ¶ 2.)  Plaintiff OLERS seeks to represent a class consisting of itself and "all persons other than Defendants who purchased the common stock of Adeptus Health in the SPO on or about July 31, 2015, as well as purchasers of the Company's common shares between April 23, 2015 and November 16, 2015, inclusive (the 'Class')."  (*Id.* at ¶ 16.)  Plaintiff OLERS filed its complaint in the Tyler Division even though there are no allegations showing that any witnesses or relevant documents are located in this Division or that any relevant conduct occurred in this Division.[1]  The OLERS Litigation is subject to the Private Securities Litigation

---

[1] Notably, as stated above, even Plaintiff OLERS is significantly closer to the federal courthouse for the Sherman Division (approximately 168 miles) than the federal courthouse for the Tyler Division (approximately 301 miles).

Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, and is currently stayed pending appointment of a lead plaintiff, approval of lead counsel, and the filing of an amended complaint.  (OLERS Litigation Dkt. 13.)

In a blatant display of forum-shopping, Plaintiff LLBF filed the LLBF II Complaint on December 22, 2016.  Earlier that same day, LLBF had voluntarily dismissed the virtually identical LLBF I Complaint it had filed against the same defendants in the Sherman Division only five weeks earlier on November 16, 2016.  (A copy of the LLBF I Complaint is attached hereto as Exhibit B.)  The LLBF II Complaint uses language identical to that used in the LLBF I Complaint in alleging violations of Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o; Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a); and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  The putative class in the LLBF II Litigation, as in the LLBF I Complaint, is defined to include "all persons or entities that purchased or otherwise acquired Adeptus Health Class A common shares . . .  between June 25, 2014 and November 1, 2016, inclusive, seeking to pursue remedies under the Securities Exchange Act of 1934."  (LLBF II Complaint at ¶ 1.)  That "action is also brought on behalf of all persons or entities who purchased shares of Adeptus Health's common stock pursuant and/or traceable to one of the Company's Offerings . . . , seeking to pursue remedies under the Securities Act of 1933."  (*Id.* at ¶ 2.)  The LLBF II Complaint was filed in the Tyler Division after the virtually identical LLBF I Complaint had been filed in the more appropriate and convenient Sherman Division and then dismissed, despite the fact that, as in the OLERS Litigation, there are no allegations showing that any witnesses or relevant documents are located in this Division or that any relevant conduct occurred in this Division.[2]

---

[2] As Plaintiff LLBF is located in New York, its location and convenience are not factors that need to be considered by the court in its analysis.

On December 27, 2016, various motions for Consolidation of the OLERS Litigation and LLBF Litigation (collectively the "cases"), for Appointment as Lead Plaintiff, and for Approval of Counsel were filed by multiple parties pursuant to the requirements of the Securities Act, the Exchange Act, and the PSLRA.  Those motions are pending.

On January 3, 2017, another putative class action, *Adkinson v. Adeptus Health Inc.*, 4:17-CV-00006 (E.D. Tex. Jan. 3, 2017), was filed against the Company, as well as Adeptus Health LLC, Adeptus Health Colorado Holdings LLC, and Adeptus Health Management LLC (the "Consumer Litigation").  (A copy of the Consumer Litigation Complaint is attached hereto as Exhibit C.)  As with LLBF I, this action was filed in the Sherman Division because "Defendants reside in Lewisville, Texas which is in the Sherman Division of the Eastern District of Texas." (Consumer Litigation Complaint at ¶13.)   The Consumer Litigation does not assert claims under the federal securities laws, and does not assert any claims against any of the Underwriter Defendants.  However, the claims in the Consumer Litigation Complaint raise a number of the same factual issues related to the Company as those in the OLERS Complaint and the LLBF II Complaint.

## IV.    THESE CASES SHOULD BE TRANSFERRED TO THE SHERMAN DIVISION OF THE EASTERN DISTRICT OF TEXAS

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  The party seeking transfer under this provision must demonstrate that the transferee venue is clearly more convenient.  *See In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

A.      **Venue is Proper in the Eastern District of Texas**

The threshold issue in the transfer analysis is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed. *See Barton v. Young,* 144 F. Supp. 2d 685, 687 (E.D. Tex. 2001) (as a threshold matter, the court assessed the appropriateness of the proposed district before evaluating the circumstances surrounding the intra-district transfer request); *see also Smith v. Michels Corp.*, No. 2:13-CV-00185, 2013 WL 4811227, at *1 (E.D. Tex. Sept. 9, 2013). Venue is proper for claims under the Exchange Act in any district in which "the defendant is found or is an inhabitant or transacts business . . . ." 28 U.S.C. § 1391(b) and (c); *see also* 15 U.S.C. § 78aa. The OLERS and LLBF II parties agree that the Eastern District of Texas is the proper district for this litigation. Furthermore, it is undisputed that these cases could have been filed in the Sherman Division as the Company Headquarters are located in that Division and LLBF I was filed in that division.

B.      **The Relevant Factors Dictate that the Sherman Division is More Convenient**

When deciding whether a transferee venue is more convenient, a district court is required to balance the private interests of the parties and the public's interest in the fair and efficient administration of justice with regard to each potential venue. *See In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). The Fifth Circuit established in *Volkswagen I* that a venue is deemed more convenient when the following public and private interest factors weigh in favor of transfer: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive;" (5) "the administrative difficulties flowing from court congestion;" (6) "the local interest in having localized interests decided at home;" (7) "the familiarity of the forum with the law that will govern the case;" and (8) "the avoidance of unnecessary problems of conflict of laws or in the

application of foreign law." *Volkswagen I*, 371 F.3d at 203. These *Volkswagen I* factors apply as much to transfers between divisions as they do to transfers between districts. *Radmax*, 720 F.3d at 288. In applying the factors, the court should exercise its discretion based on the particular facts and circumstance of each case. *Radmax,* 720 F.3d at 287–88; *see also Barton*, 144 F. Supp. 2d at 688–89. Rehearing the issue of transfer of venue under § 1404 en banc, the Fifth Circuit affirmed that a requesting party has met its burden and adequately demonstrated a transferee venue is more convenient if a majority of the private and public interest factors weigh in favor of transfer. *Volkswagen II*, 545 F.3d at 308–09, 319.

In *Radmax*, the Fifth Circuit considered a petition for a writ of mandamus directing the Marshall Division of the Eastern District of Texas to transfer a case to the Tyler Division. In rendering its decision, the *Radmax* court determined that three of the *Volkswagen I* factors weighed in favor of transfer and the remaining five factors were neutral. As a result, the *Radmax* court determined that the petitioner had discharged its burden of showing the Tyler Division was clearly more convenient than the Marshall Division, and the transfer was warranted. *See, Radmax,* 720 F.3d at 290. In the cases that are the subject of this motion, six factors weigh strongly in favor of transfer while the remaining two are neutral. Therefore, the facts of these cases weigh even more heavily in favor of transfer than the *Radmax* case.

> **C.** **The Private Interest Factors Strongly Favor Transfer to the Sherman Division**

> **1.** **Sources of Proof Are More Easily Accessed in the Sherman Division**

When "'[a]ll of the documents and physical evidence' are located in [a particular division], this factor 'weigh[s] in favor of transfer.'" *Radmax*, 720 F.3d at 288 (quoting *Volkswagen II*, 545 F.3d at 316). As previously noted, the Company maintains its Headquarters in Lewisville, Texas, which is located within the Sherman Division. (*See*, Pyle Declaration at ¶

3.) This sole corporate office is where the corporate and financial records of the Company are located. (*See*, Pyle Declaration at ¶ 4.) By contrast, the Company has no corporate offices, records, or even operations within the Tyler Division. (*See*, Pyle Declaration at ¶ 7.) [3] Additionally, each of the Complaints is wholly devoid of any allegations even suggesting that relevant facts took place in, or pertinent documents are located within, the Tyler Division. (*See,* OLERS Complaint, *passim;* LLBF II Complaint, *passim.*) For these reasons, this factor weighs heavily in favor of transfer.

### 2. The Availability of Compulsory Process to Secure the Attendance of Non-Parties Favors Transfer to Sherman

FED. R. CIV. P. 45 provides that "[a] subpoena may command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person . . . ." In *Radmax*, the Fifth Circuit determined an intra-district transfer was warranted, in spite of the fact that all known third-party witnesses were "within the subpoena power of either court." *Radmax,* 720 F.3d at 288. Since these cases are still in the preliminary stages, it is unclear at this time which witnesses may be required at trial. However, it is reasonable to assume the likely witnesses include corporate employees or officers working at, or residing very near, the Company's Lewisville, Texas Headquarters. Such individuals are subject to compulsory process requiring them to attend a hearing or trial in person if the case is pending in the Sherman Division. The same is not true for a matter pending in the Tyler Division. Therefore, this factor weighs heavily in favor of transfer to the Sherman Division.

---

[3] In addition, most of the Underwriter Defendants maintain offices in Dallas, Texas, which is over 30 miles closer to Sherman than it is to Tyler. Only two Underwriter Defendants have Tyler offices, but one of those offices is unrelated to the securities business and the Underwriter Defendant with the other office also maintains an office in Sherman. On the whole, the Underwriter Defendants' Texas offices are much closer to the Sherman Division than they are to the Tyler Division.

### 3.     The Cost of Attendance for Willing Witnesses Favors Transfer

The relative convenience of the witnesses is often recognized as "the most powerful factor governing the decision to transfer a case." *Barton,* 144 F. Supp. 2d at 688 (internal quotation marks omitted).   Because it generally becomes more inconvenient and costly for witnesses to attend trial the further the distance they are from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule.   This rules holds that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I,* 371 F.3d at 204–05.   If the '100-mile' threshold is met, the "court [then] determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues." *IPVX Patent Holdings, Inc. v. AltiGen Commc'ns, Inc.,* No. 6:11-CV-568, 2014 WL 12597042, at *3 (E.D. Tex. Feb. 11, 2014).   This rule favors a transfer if "the transferee venue is a shorter average distance from witnesses than the transferor venue." *Id.*

In *Radmax,* the Fifth Circuit granted a petition for writ of mandamus requiring an intra-district transfer even though it determined this factor was neutral, as the distance between the two courthouses at issue was only 62 miles.   720 F.3d at 288.   Here, the Sherman Division is located approximately 127 miles from the Tyler Division, thereby activating the *Volkswagen I* '100-mile' rule.   Although the exact witnesses are not known at this time, likely witnesses include officers, executives, and employees who work at the Company Headquarters.   Here, the Company Headquarters are significantly closer to the Sherman Division courthouse than to the Tyler Division courthouse.

In addition, the Dallas/Fort Worth International Airport ("DFW Airport") is well-known as a convenient destination for persons traveling to North Texas from throughout the world.

- 10 -

DFW Airport is located 68 miles from the Sherman federal courthouse, whereas it is 120 miles from the courthouse in Tyler, Texas.  Therefore, to the extent parties or witnesses are required to travel to court from out-of-state, as compared to a case pending in the Sherman Division, any travel to the Tyler Division would add over 50 miles of travel distance for these witnesses after they arrive at DFW Airport, which is more than a "slight difference" for these parties. Therefore, a transfer of these cases to the Sherman Division would alleviate at least a portion of the Fifth Circuit's *Volkswagen I* concerns associated with "[a]dditional distance [and] additional travel time."  371 F.3d at 205.  In sum, this factor weighs heavily in favor of transfer.

### 4.     No Delay Will Result From Transfer

Courts frequently take into consideration whether a transfer would result in delay for any of the parties.  *See Radmax*, 720 F.3d at 289; *Barton*, 144 F. Supp. 2d at 688; *see also In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 691 (E.D. Tex. 1999).  In *Radmax*, the Fifth Circuit clarified that "garden-variety delay" is not relevant under the § 1404 factors because it would "mitigate transfer in every case."  *Radmax*, 720 F.3d at 289.  Nevertheless, by any standard, there is no risk of delay to the cases from a transfer.  These cases are in their initial stages; they are governed by the PSLRA, and motions to consolidate, to designate a lead plaintiff, and to approve counsel have just been filed.  Therefore, this factor is neutral in the analysis.

### D.     The Public Interest Factors Also Favor Transfer to the Sherman Division

### 1.     The Sherman Division Has a Strong Local Interest in Resolving This Dispute

"[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor."  *Advanced Processor Techs. LLC v. Atmel Corp.*, No. 2:12-CV-152-JRG-RSP, 2013 WL 1279053, at *9 (E.D. Tex. Mar. 26, 2013) (quoting *In re Hoffman-LaRoche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)); *see*

*also Volkswagen II*, 545 F.3d at 317–18 (noting a division's strong local interest when the incident giving rise to the litigation occurred within the division and all of the evidence was located within the division). Much like the *Volkswagen II* case, this factor weighs in favor of transfer here given that the Company Headquarters are located within the Sherman Division and the corporate activities of the entity and all public statements made by or on behalf of the Company would have been made at or issued from the Company Headquarters. (*See*, Pyle Declaration at ¶ 6.)

### 2. The Relative Docket Conditions of the Sherman and Tyler Divisions Favor Transfer

Another of the public interest factors to be considered in this analysis is the "administrative difficulties flowing from court congestion." *Volkswagen I*, 371 F.3d at 203. For this reason, the relative docket conditions of Judge Mazzant in the Sherman Division and Judge Schroeder in the Tyler Division also favor a transfer to the Sherman Division.

### a. Case Allocations

As an initial matter, the judges of the Eastern District of Texas have considered and determined how cases filed in that District should be allocated among the courts. General Order No. 16-7, which assigns civil and criminal actions in the United States District Court for the Eastern District of Texas, states that 95% of the Sherman Division non-patent civil cases are assigned to Judge Mazzant, whereas none are assigned to Judge Schroeder. (A copy of General Order No. 16-7 is attached hereto as Exhibit D.)

### b. Caseload

In addition, the most recent data available indicates Judge Schroeder's volume of pending cases is roughly twice that of Judge Mazzant. (*See* Judicial Strategic Profiles of Judge Mazzant

and Judge Schroeder, attached hereto as Exhibit E.)  Judge Mazzant has more capacity to preside over this complex litigation than does Judge Schroeder.

The Standing Order and the caseload data demonstrate that judicial efficiency is best served by litigating this matter in the Sherman Division.  Thus, this factor also favors transfer.

### 3.      The Courts' Familiarity with the Governing Law is Neutral

The only claims asserted in the cases are securities claims.  Since such claims are governed by federal law, both forums are equally capable of handling the cases.  *See In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 405 (S.D.N.Y. 1998).  For this reason, this factor is neutral.

### 4.      There Are No Conflict of Law Issues in This Case

The remaining public interest factor concerning the avoidance of unnecessary problems of conflict of laws also is neutral.  It is not possible for there to be any conflicts of laws in these cases.

## V.     PLAINTIFFS' FORUM CHOICE DOES NOT OUTWEIGH THE FACTORS FAVORING TRANSFER

The only factor that favors leaving these cases in the Tyler Division is OLERS' and LLBF's (collectively the "plaintiffs") choice of venue.  However, "[t]he plaintiff's choice of venue is not a separate factor."  *Smith,* 2013 WL 4811227, at *1 (citing *Volkswagen II*, 545 F.3d at 314–15).  Instead, it "contributes" to the analysis of whether the requesting party has satisfied the convenience standard.  *Id.* (citing *Volkswagen II*, 545 F.3d at 315).  "[W]hen the plaintiff does not reside in the chosen forum and when none of the operative facts have occurred in the chosen forum," a plaintiff's forum selection is afforded no greater consideration than any of the private or public interest factors established in *Volkswagen I.  Barton*, 144 F. Supp. 2d at 688 (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966); *Rock Bit Int'l v. Smith Int'l,*

- 13 -

*Inc.*, 957 F. Supp. 843, 844 (E.D. Tex. 1997); *Reed v. Fina Oil and Chem. Co.,* 995 F. Supp. 705, 714 (E.D. Tex. 1998)).  Indeed, the plaintiffs have no connections to the Tyler Division and none of the relevant facts surrounding the cases occurred within the Tyler Division.  Furthermore, "the traditional deference given to plaintiff's choice of forum . . . is *less*" for "*intra-district transfers.*" *Radmax,* 720 F.3d at 289 (emphasis added).  Moreover, the fact that these cases are class actions further reduces the significance of the plaintiffs' choice of forum.  *Nematron*, 30 F. Supp. 2d at 405.  For these reasons, and in light of the forum-shopping engaged in by the LLBF Plaintiff, the plaintiffs' choice of forum here should be afforded minimal weight compared with the other *Volkswagen I* factors that strongly favor a transfer to the Sherman Division.

## VI.    THE FILING OF THE CONSUMER LITIGATION IN THE SHERMAN DIVISION FAVORS TRANSFER

While the Consumer Litigation is not appropriate for consolidation with the OLERS and LLBF II cases because it does not assert claims under the federal securities laws and the Company is the only defendant common to all of the cases, the Consumer Litigation Complaint nevertheless raises a number of the same factual issues related to the Company as those in the OLERS Complaint and the LLBF II Complaint.[4]  If the Consumer Litigation and the OLERS and LLBF II Litigation proceed in separate courts, there will undoubtedly be duplicative discovery of or regarding the Company and the common factual issues with the attendant risks of inconsistent rulings on the scope of discovery and admissibility of evidence.  Such duplication and risks will be avoided and judicial efficiency enhanced by coordination of discovery with respect to the Company in the cases.  Such coordination can be accomplished only if the cases are assigned to

---

[4] Common factual issues include, e.g., billing practices, disclosure of fees and charges, services provided, and an investigation by a Denver television station. *See*, OLERS Complaint, LLBF II Complaint and Consumer Litigation Complaint, *passim.*

- 14 -

the same court.  Therefore, the filing of the Consumer Litigation in the Sherman Division also favors transfer of these cases to that division.

## VII.   CONCLUSION

A transfer of these cases to the Sherman Division is warranted for the convenience of the parties and in the interest of justice.  The majority of the relevant private and public interest factors weigh in favor of transfer.  The plaintiffs' choice of forum is accorded very little weight since this is an intra-district transfer, none of the operative facts occurred in the Tyler Division, the plaintiffs have no connection with the Tyler Division and the cases are class actions, one of which was originally filed in the Sherman Division.  Duplicative discovery can be avoided and judicial efficiency enhanced by the appropriate coordination of discovery with respect to the Company relating to fact issues common to these cases and the Consumer Litigation pending in the Sherman District.  Since no party will be prejudiced by the transfer, and justice so requires, Defendants respectfully request that the Court transfer both of these cases from the Tyler Division to the Sherman Division pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted,

Dated: January 17, 2017

By:
*/s/ James R. Nelson*
JAMES R. NELSON (Texas Bar No. 14899800)
jr.nelson@dlapiper.com
**DLA Piper LLP (US)**
1717 Main Street, Suite 4600
Dallas, Texas 75201-4629
Tel: 214.743.4512
Fax: 972.813.6269

Of Counsel:
DAVID CLARKE, JR. (D.C. Bar No. 396002)
david.clarke@dlapiper.com
**DLA Piper LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel: 202.799-4000
Fax: 202.799.5999

*Counsel for Defendants Adeptus Health Inc., Thomas S. Hall, Timothy L. Fielding, Richard Covert, Daniel W. Rosenberg, Gregory W. Scott, Ronald L. Taylor, Jeffery S. Vender, Steven V. Napolitano, Daniel J. Hosler and Stephen M. Mengert*

*/s/ Rodney Acker*
RODNEY ACKER (Texas Bar No. 00830700)
rodney.acker@nortonrosefullbright.com
**Norton Rose Fulbright US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: 214.855.8000
Fax: 214.855.8200

Of Counsel:
LYNN K. NEUNER (New York State Bar No. 2595544)
lneuner@stblaw.com
GEORGE S. WANG (New York State Bar No. 2946242)
gwang@stblaw.com
**Simpson Thacher & Bartlett LLP**
425 Lexington Avenue
New York, NY 10017
Tel:  212.455.2000
Fax:  212.455.2502

*Counsel for Defendants SCP III AIV THREE-FCER, L.P. and SCP III AIV THREE-FCER Conduit, L.P. (together named in the Complaint as "Sterling Partners")*

/s/ R. Thaddeus Behrens
R. THADDEUS BEHRENS (Texas Bar No. 24029440)
Thad.Behrens@haynesboone.com
DANIEL H. GOLD (Texas Bar No. 24053230)
Daniel.Gold@haynesboone.com
BENJAMIN G. GOODMAN (Texas Bar No. 24091433)
Benjamin.Goodman@haynesboone.com
**Haynes and Boone, LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Tel: 214.651.5000
Fax: 214.651.5940

*Counsel for Defendants Goldman, Sachs & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Evercore Group L.L.C., Morgan Stanley & Co. LLC, Piper Jaffray & Co., RBC Capital Markets, LLC, Dougherty & Company LLC, Deutsche Bank Securities Inc., and BMO Capital Markets Corp.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to

electronic service are being served with a copy of this document via the Court's CM/ECF system

on January 17, 2017.


*/s/ James R. Nelson*
JAMES R. NELSON

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule CV-7(h) and (i), on January 12, 2017 and January 13, 2017, James R. Nelson, counsel for Defendants Adeptus Health Inc., et.al., conferred with Lester R. Hooker, counsel for Plaintiff LLBF, and Andrea L. Fair, counsel for Plaintiff OLERS, respectively, by telephone regarding the Motion.  The participants discussed the merits of their positions and attempted to resolve their differing views.  Both Plaintiffs are opposed to the relief requested in the Motion, and discussions have conclusively ended in an impasse.  Therefore, the referenced Motion is presented to the Court for determination.

*/s/ James R. Nelson*
JAMES R. NELSON